ORIGINAL

Paid

1  Scott R. Mosko (State Bar No. 106070)
   scott.mosko@finnegan.com
2  FINNEGAN, HENDERSON, FARABOW,
       GARRETT & DUNNER, L.L.P.
3  Stanford Research Park
   3300 Hillview Avenue
4  Palo Alto, California 94304-1203
   Telephone:  (650) 849-6600
5  Facsimile:   (650) 849-6666

6  Attorneys for Plaintiff
   AMERICAN PETROLEUM INSTITUTE
7

8  (Additional counsel listed on signature page.)

9

**Filed**

JAN 14 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

10                    UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                              SAN JOSE DIVISION

13

14  In Re Ex Parte Application of American      Case No.  CV 11  80008 MISC. HRL
    Petroleum Institute for Order to Obtain
15  Discovery for Use in Foreign Proceedings    EX PARTE APPLICATION
                                                OF AMERICAN PETROLEUM
16                                              INSTITUTE FOR ORDER PURSUANT
                                                TO 28 U.S.C. § 1782(A) TO OBTAIN
17                                              DISCOVERY FOR USE IN FOREIGN
                                                PROCEEDINGS FROM GOOGLE
18                                              AND SUPPORTING MEMORANDUM
                                                OF LAW
19

20

21

22

23

24

25

26

27

28

## I. INTRODUCTION

Applicant American Petroleum Institute ("API") submits this Ex Parte Application for Order to Obtain Discovery for Use in Foreign Proceedings pursuant to 28 U.S.C. § 1782(a).[1] API seeks an order to authorize a subpoena requiring Google Inc., a resident of Mountain View, California, to provide targeted documents for use in connection with six copyright, trademark, and/or unfair competition actions in China. The proposed order and subpoena are attached to this Application as Exhibits A and B, respectively.

The foreign proceedings for which API seeks discovery of Google were filed by API in China in September 2010, processed by the court in December 2010, and the filing receipts for these cases issued on January 4, 2011. All of these proceedings are based on copyright, trademark, and/or unfair competition violations by the owners of the engineeringsky.com website (collectively, "Engineeringsky"). Among other things, the complaints in these cases allege that Engineeringsky has engaged in copyright infringement, trademark infringement, and unfair competition by using API's trademarks without authorization and by offering unauthorized and infringing copies of API's standards, specifications, and recommended practices publications on its website in violation of API's copyrights.

Engineeringsky's business is conducted online, and Engineeringsky advertises its engineeringsky.com website online via Google. Specifically, Engineeringsky has one or more "sponsored-link advertisements" that it created using Google's advertising services. Google distributes Engineeringsky's sponsored-link advertisements on Google's main google.com website, and various additional websites that may or may not be owned by or associated with Engineeringsky (the "Publishers' Websites"). When Internet users view Engineeringsky's sponsored-link advertisement on Google's main google.com website and click on it to be taken to Engineeringsky's engineeringsky.com website, Engineeringsky pays a fee to Google. When Internet users view Engineeringsky's sponsored-link advertisement on one of the Publishers' Websites and click on it to be taken to Engineeringsky's engineeringsky.com website, Engineeringsky pays a fee to Google, and

---

[1] Ex Parte filing of this kind of application has been authorized by this Court. *See In re Republic of Ecuador*, slip op., 2010 WL 3702427, at *1-*2 (N.D. Cal. Sept. 15, 2010).

- 1 -   AMERICAN PETROLEUM INST. EX PARTE APP.
RE DISCOVERY - Case No. _____

Google shares the fee with the owner of the Publisher's Website (the "Publisher").

Because Engineeringsky advertises its online business via Google, Google has information relevant to API's actions against Engineeringsky in China. Thus, API seeks limited discovery of Google pursuant to § 1782(a), including documents sufficient to identify Engineeringsky's sponsored-link advertisements distributed by Google, Engineeringsky's payments to Google (as charged on a cost-per-click basis), the Publishers' Websites on which Engineeringsky's sponsored-link advertisement appeared and/or appears, the Publishers' names, and the amounts of Google's payments to the Publishers.

These documents are relevant to API's copyright, trademark, and unfair competition actions in China because, among other things, they show that Engineeringsky has engaged in trademark infringement by prominently using the API trademark in its advertisement(s) without authorization from API, that Internet users were diverted to the infringing engineeringsky.com website, and that API was damaged by Engineeringsky's unlawful activities.

For the reasons discussed below, API satisfies all of the statutory requirements of § 1782(a), and the factors that bear on whether a Court should exercise its discretion to allow such discovery all weigh decidedly in favor of granting API's requested discovery. Accordingly, relief under § 1782(a) is warranted.

## II.   FACTUAL BACKGROUND

### A.   API and Its Trademarks and Copyrights

API is the leading trade association for the petroleum and natural gas industry in the U.S. (Declaration of B. Brett Heavner in Support of API's Ex Parte Application for Order to Obtain Discovery for Use in Foreign Proceedings ("Heavner Decl."), ¶ 2.). API was established to afford a means of cooperation with the government in all matters of national concern, foster foreign and domestic trade in American petroleum products, promote the interests of the petroleum industry, and promote the improvement of its members and the study of the arts and sciences connected with the oil and gas industry. (*Id.*)

For more than ninety years, API has used API as a trade name and trademark for a wide variety of products and services aimed at the promotion, development, and improvement of the petroleum and

natural gas industry. API's services include, among other things, the development and publication of standards, specifications, and recommended practices for the petroleum and natural gas industry. These publications assist businesses in the use of safe, interchangeable parts, the production of quality products, and the adoption of safe operations practices in the petroleum and natural gas industry. Each API standard, specification, and recommended practice is published in a booklet that prominently bears the API mark. API owns the copyrights for these works, and has obtained copyright registrations for the publications through the U.S. Copyright Office. (Heavner Decl. ¶ 3.)

### B. Engineeringsky's Distribution of Unauthorized and Infringing Copies of API's Standards, Specifications, and Recommended Practices Publications

In 2010, API learned that Engineeringsky was distributing unauthorized and infringing copies of certain API standards, specifications, and recommended practices publications via its engineeringsky.com website. (Heavner Decl. ¶ 4.) In September 2010, API filed the following six actions in China against Engineeringsky:

- An action for trademark infringement and unfair competition based on Engineeringsky's infringing use of API's registered trademark ENERGY API, among other things (English translation of complaint attached as Exhibit C);

- An action for copyright infringement and unfair competition based on Engineeringsky's distribution of unauthorized and infringing copies of API Specification 5L, among other things (English translation of complaint attached as Exhibit D);

- An action for copyright infringement and unfair competition based on Engineeringsky's distribution of unauthorized and infringing copies of API Standard 570, among other things (English translation of complaint attached as Exhibit E);

- An action for copyright infringement and unfair competition based on Engineeringsky's distribution of unauthorized and infringing copies of API Specification 11E, among other things (English translation of complaint attached as Exhibit F);

- An action for copyright infringement and unfair competition based on Engineeringsky's distribution of unauthorized and infringing copies of API Recommended Practice 2A-WSD, among other things (English translation of complaint attached as Exhibit G); and

- An action for copyright infringement and unfair competition based on Engineeringsky's distribution of unauthorized and infringing copies of API Recommended Practice 13B-1, among other things (English translation of complaint attached as Exhibit H).

Filing receipts for these cases issued on January 4, 2011, copies of which are attached as Exhibit I (in Chinese).

In each of these actions, API seeks an order enjoining Engineeringsky from using the unauthorized and infringing trademarks and publications, awarding API damages for Engineeringsky's unlawful activities, and requiring Engineeringsky to engage in corrective advertising, among other things. (Heavner Decl. ¶ 5.)

### C. Engineeringsky's Advertising Activities Relating to Its Infringing Website

Engineeringsky's sponsored-link advertisement that is distributed online by Google is copied below:

> **API STD 650 2009**
> **PDF**
> Latest edition,
> updated in 11/2009
> Download this code at
> low price!
> www.engineeringsky.com

A sample printout showing this advertisement as it appeared on a Publisher's Website, apistandards.com, is attached as Exhibit J (Heavner Decl. at ¶ 6). As shown on Exhibit J, the wording "Ads by Google" appears above the advertisement. Each time an Internet user clicked on the Engineeringsky advertisement on the Publisher's Website located at the domain name apistandards.com, Engineeringsky paid Google, and Google paid the Publisher.

### D. Information in Google's Possession Relevant to the Chinese Actions

Because Engineeringsky is an advertiser with Google, Google has certain information and documents relevant to API's claims of trademark infringement, copyright infringement, and unfair competition in the Chinese actions including, but not limited to, the following:

- Engineeringsky's sponsored-link advertisements distributed by Google (this information is relevant to the API's trademark infringement claims based on the unauthorized use of the API marks by Engineeringsky in the sponsored-link advertisements);

- the amount and dates of Engineeringsky's payments to Google (this information is relevant to the extent of harm to API resulting from Engineeringsky's unlawful acts because it shows how many Internet users were diverted to Engineeringsky's infringing website; it also constitutes evidence of actual confusion);

- the search terms that generated Google's display of the Engineeringsky's sponsored-link advertisements on Google's main google.com website (this information is relevant to API's trademark infringement claims to the extent that the search terms contained Engineeringsky's API marks);

- the domain names which identify the Publishers' Websites on which Engineeringsky's sponsored-link advertisement appeared and/or appears (this information is relevant to API's trademark infringement claims because the Engineeringsky advertisements used the API trademark without authorization from API and, thus, each such advertisement constitutes an infringement);

- the Publishers' names and contact information sufficient to identify the Publishers (this information is needed for API to further investigate whether Engineeringsky is itself a Publisher and/or if it is associated or affiliated with any of the Publishers, and whether the Publishers are aware of any instances of actual confusion between Engineeringsky and API and their products as a result of the display of the infringing advertisements on their websites); and

- the amounts of Google's payments to each of the Publishers (this information is relevant to the revenues generated by Engineeringsky's infringing advertisement(s)).

## III. ARGUMENT

### A. API Has Satisfied the Statutory Requirements for Obtaining Discovery Under § 1782(a)

Title 28 U.S.C. § 1782(a) authorizes the Court to permit persons involved in legal proceedings outside the United States to obtain discovery from persons in the United States for use in those foreign proceedings.

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.
>
> A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

The Court thus has the authority to grant discovery under § 1782(a) if the following requirements are met:

1. The request must be made "by a foreign or international tribunal" or by "an interested person;"

2. Evidence must be for use in a proceeding in "a foreign tribunal;" and

3. The person from whom the discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*Croyolife, Inc. v. Tenaxis Med., Inc.*, 2009 WL 88348, at *1 (N.D. Cal. Jan. 13, 2009); *In re Republic of Ecuador*, slip op., 2010 WL 3702427, at *1-*2 (N.D. Cal. Sept. 15, 2010).

API meets all of these requirements. API is an "interested person" under the statute. API is the plaintiff in the copyright, trademark, and unfair competition proceedings in China against Engineeringsky, and has a strong interest in being able to use the requested Google documents to show consumer confusion and harm to API. Indeed, the API trademark and API's copyrighted publications are assets of incalculable value that API has a clear interest in protecting them from further infringement.

Additionally, the requested evidence will be "for use in a proceeding in a foreign or international tribunal." Six copyright, trademark, and/or unfair competition actions have already been initiated against Engineeringsky in China.

Finally, Google resides in Mountain View, California, which is located in the Northern District of California. (Heavner Decl. ¶ 7.)

The request also seeks evidence through means specifically provided for by the statute, namely, requests for documents, and as shown in the subpoena attached as Exhibit B, API has requested documents narrowly tailored to issues in the proceedings in China to ensure that Google's compliance with API's requests is not overly burdensome.

**B.     All the Relevant Factors Used to Determine Whether the Court Should Exercise Discretion to Grant Discovery Under § 1782(a) Weigh in API's Favor**

The Supreme Court and Ninth Circuit have identified the following four factors that "bear consideration" in deciding whether to permit discovery under § 1782(a), each of which is also satisfied here.

1. Whether "the person from whom discovery is sought is a participant in the foreign proceeding" because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant";

2. "[T]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

3. "[W]hether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

4. Whether the request is otherwise "unduly intrusive or burdensome."

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004); *London v. Does 1-4*, 279 F. App'x 513, 515 (9th Cir. 2008).

Regarding the first factor, API does not anticipate that Google will be a party or participant in any of the Chinese actions.

The second factor above also weighs in API's favor. The character of the Chinese cases—copyright, trademark, and unfair competition actions—favor allowing the requested discovery because it is narrowly tailored to those claims. The Chinese tribunal would also be receptive to the evidence because it will help the court better understand the nature and scope of the infringing activities and the damage to API (e.g., the evidence will show the extent to which consumers were confused and/or diverted to the infringing engineeringsky.com website).

Although not required under § 1782(a),[2] Chinese civil procedure expressly allows discovery in litigation. Specifically, pursuant to Article 61 of the Law of Civil Procedure of the People's Republic of China ("China Civil Procedure Law"), counsel has the right to "investigate, collect evidence, and inspect files pertaining to the case." Further Article 65 provides that the court itself also has the authority to investigate and obtain evidence from the parties. A copy of English translations of Articles 61 and 65 of the Chinese Civil Procedure Law are attached as Exhibit K. Thus, there is no

---

[2] The Supreme Court and this Court have made clear that § 1782(a) discovery is appropriate even in situations where a tribunal would not order such discovery itself, or might not accept all discovery properly ordered pursuant to § 1782(a). *In re Republic of Ecuador*, slip op., 2010 WL 3702427, at *2 n.1 (explaining that under § 1782 "there is no requirement that the information sought be discoverable under the law governing the foreign proceeding"); *Croyolife*, 2009 WL 88348, at *3 (finding no basis to conclude that the German court would be unreceptive to the requested information and noting "[i]f the German court decides that it does not need or want the discovery sought, it no doubt has the authority to exclude the material from evidence").

reason to believe that the Chinese court would be unreceptive to U.S. federal court assistance.

Third, the § 1782(a) request is not an attempt to circumvent foreign proof-gathering restrictions or other policies of China or the United States. Here, no such restrictions or policies exist and the requested discovery is consistent with the type of discovery available in the Chinese proceedings.

Finally, the request is not "unduly intrusive or burdensome." As shown below, API seeks documents on only six topics, which are all narrowly tailored to API's copyright, trademark, and unfair competition claims in the Chinese proceedings. Further, although permissible under § 1782(a), API has not requested a deposition of Google, further reducing any burden on Google.

Where, as here, the applicant satisfies the statutory requirements of § 1782(a), and the above factors weigh in the applicant's favor, courts in this Circuit have consistently permitted discovery under § 1782(a). *See, e.g., London v. Does 1-4,* 279 F. App'x 513; *Chevron Corp. v. E-Tech Int'l,* slip op., 2010 WL 3584520 (S.D. Cal. Sept. 10, 2010) (affirming entitlement to discovery under § 1782); *In re Republic of Ecuador,* 2010 WL 3702427. Further, such applications are routinely granted on an ex parte basis. *Republic of Ecuador,* 2010 WL 3702427, at *2 (citing cases explaining that it is common for the process of presenting the request to a court and to obtain the order authorizing discovery to be conducted ex parte and, also, noting that such ex parte applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it (internal citations omitted)). As such, the requested discovery is warranted here.

**C.    API Seeks Targeted Discovery**

API seeks documents relating to the nature and scope of Engineeringsky's infringing activities, and the consumer confusion and harm to API as a result of Engineeringsky's unlawful activities. Specifically, API requests that Google provide documents sufficient to show the following information:

- Engineeringsky's sponsored-link advertisements distributed by Google;
- the amount and dates of Engineeringsky's payments to Google;

- the search terms that generated Google's display of the Engineeringsky's sponsored-link advertisements on Google's main google.com website;
- the domain names which identify the Publishers' Websites on which Engineeringsky's sponsored-link advertisement appeared and/or appears;
- the Publishers' names and contact information sufficient to identify the Publishers; and
- the amounts of Google's payments to each of the Publishers.

API sets forth these document requests in Schedule A to the proposed Rule 45 Subpoena to Google, which API requests the Court authorize and which is attached hereto as Exhibit B. If the Court grants API's present Application, API requests that the documents be produced, and any objections set forth, by February 14, 2011.

### IV. CONCLUSION

For the reasons discussed above, API respectfully requests that the Court enter the proposed Order attached as Exhibit A pursuant to § 1782(a) authorizing API to obtain limited discovery from Google as set forth in the proposed Rule 45 subpoena attached as Exhibit B.

Dated: January 14, 2011

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.

By: _____
Scott R. Mosko

Attorneys for Plaintiff
AMERICAN PETROLEUM INSTITUTE

*Of Counsel:*

B. Brett Heavner
Stephanie H. Bald
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
Telephone:   (202) 408-4000
Facsimile:   (202) 408-4400